**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

KAVEH AZIMI,

        Plaintiff,

v.                                    No. 06-2114-KHV-DJW

UNITED PARCEL SERVICE, INC., et al.,

        Defendants.

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff's Motion to Compel (doc. 83). More specifically, Plaintiff seeks complete responses from UPS to discovery requests asking for witness contact information as well as grievance records, employment files, driving records and discipline records from the last six years for package and feeder drivers. Defendant UPS objects to providing the documents and information requested on grounds that the requests are overly broad, unduly burdensome and irrelevant.

Upon consideration of the arguments presented, and for the reasons stated below, Plaintiff's Motion will be granted in part and denied in part.

## I.  **Factual Background**

Plaintiff, born in Iran and a practicing Muslim, is a former employee of Defendant United Parcel Service ("UPS") and member of Defendant Teamsters Local 41 ("Teamsters"). Plaintiff was employed by UPS at its Lenexa, Kansas facility from 1989 until October 2005. Plaintiff was a package car ("local delivery") driver from 1999 to May 2004 and worked as a tractor-trailer ("feeder") driver from May 2004 until October 2005.

Plaintiff alleges that, throughout his employment, several UPS supervisors made derogatory comments about Plaintiff's national origin, race and religion, such as: "who let you in the country," and "do you have a green card," and "how is the Ayatollah." While Plaintiff was a feeder driver, Plaintiff alleges his supervisors held him to a different standard or performance than non-Iranian, non-Muslim similarly situated employees, required him to do his work in a manner not required by non-Iranian and non-Muslim similarly situated employees, and disciplined Plaintiff without cause because he was Iranian and Muslim. Plaintiff states that he complained about the discriminatory conduct to the Teamsters and to UPS.

In July 2005, Plaintiff was terminated for having three avoidable accidents in one year. According to Plaintiff, two out of these three avoidable accidents consisted of the doors of his trailer coming loose due to faulty chains on the trailer doors ("swing-door accidents"). Plaintiff asserts he was inappropriately disciplined for these incidents based on his religion, race and national origin, as well as in retaliation for complaining about discriminatory conduct directed at him by his supervisors. In support of this assertion, Plaintiff states UPS was aware that the chains holding the trailer doors closed often failed, but UPS never took action to repair the chains. Plaintiff filed a grievance regarding his termination and ultimately was reinstated by UPS with a suspension.

Plaintiff allegedly had another avoidable accident on October 3, 2005 and again was discharged. Defendant asserts Plaintiff was not reinstated after his accident on October 3, 2005 because it was Plaintiff's fourth avoidable accident as a feeder driver in the one year period between October 2004 and October 2005. Defendant states that the decision to terminate Plaintiff was made by Feeder Manager Steve Mitchell and Feeder Division Manager Guy Albertson, in consultation with Labor Manager Bill Margrave.

Plaintiff alleges UPS's stated reasons for termination are pretextual and that the harassment, the higher standards for work performance, the disciplinary action, and the termination of employment were all motivated solely by Plaintiff's religion, race and national origin and in retaliation for complaining about the discriminatory conduct.

## II. Discussion

### A.    Permissible Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[1] Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[2] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[3]

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption

---

[1]Fed. R. Civ. P. 26(b)(1).

[2]*Owens v. Sprint/United Management Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted).

[3]*Id.* (citation omitted).

in favor of broad disclosure.[4]   Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[5]

**B.      Blanket Objections Lodged by Defendant**

   **1.      Geographic Scope**

   Defendant objects to discovery of employment records for employees outside of the Lenexa facility as overly broad in geographic scope.  Plaintiff disagrees, arguing the geographic scope of discovery should be similarly situated UPS employees in any facility located in Kansas.

   When addressing overly broad objections to discovery requests, courts have limited the geographic scope of discovery.[6]  In non-class action employment discrimination cases, the standard for determining the geographic scope of discovery focuses on "the source of the complained discrimination – the employing unit or work unit."[7]  In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to plaintiff's employing unit.[8]  Discovery may be expanded from the Plaintiff's employing

---

   [4]*Id.* (citations omitted).

   [5]*Id.* (citation omitted).

   [6]*See, e.g., Mackey v. IBP, Inc.*, 167 F.R.D. 186, 195 (D. Kan.1996) (limiting scope of discovery to defendant's Emporia plant that employed plaintiff); *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D. Kan.1995) (limiting scope to plaintiff's employing unit); *Doebele v. Sprint*, No. 00-2053-KHV, 2001 WL 1718259, at *8 (D. Kan. June 5, 2001) (limiting scope of discovery to Kansas employees of defendant's PCS unit); *EEOC v. Kansas City S. Ry.*, No. 99-2512-GTV, 2000 WL 33675756, at *4-5 (D. Kan. Oct. 2, 2000) (limiting scope of discovery to Gulf region).

   [7]*Owens*, 221 F.R.D. at 653 (citing *Mackey*, 167 F.R.D. at 195 (quoting *Heward v. W. Elec. Co.*, No. 83-2293, 1984 WL 15666, at *6 (10th Cir. July 3, 1984))).

   [8]*Id.* (citing *Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178, 184 (10th Cir.1973)).

4

unit, however, if the plaintiff can show the requested information is "particularly cogent" to the matter[9] or if the plaintiff can show a "more particularized need for, and the likely relevance of, broader information."[10]

To determine the appropriate employing unit of the plaintiff alleging employment discrimination, courts look to the level of the supervisor or supervisors who are primarily responsible for the employment decision regarding the plaintiff and other similarly-situated employees.[11] The rationale is that the motive and intent of the supervisors who made the employment decisions relating to the plaintiff and other employees is relevant to determining whether the employment decision was discriminatory.[12]

In this case, Defendant maintains that the decision to terminate Plaintiff was made by Feeder Manager Steve Mitchell and Kansas Feeder Division Manager Guy Albertson, in consultation with Kansas District Labor Manager Bill Margrave. Albertson and Margrave both have supervisory roles across UPS's Kansas district. Mitchell works only within the Lenexa facility. Because Albertson and Margrave make employment decisions across the Kansas district, information about employees across Kansas could be relevant to Plaintiff's claims. Accordingly, the appropriate geographic scope of discovery is the Kansas district.

---

[9]*Id.* at 654 (citing *Heward*, 1984 WL 15666, at *6).

[10]*Id.* (citing *Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan.1995) (*Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990); *James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir.1979); *Serina v. Albertson's, Inc.*, 128 F.R.D. 290, 291-92 (M.D. Fla.1989); *Prouty v. Nat'l R.R. Passenger*, 99 F.R.D. 545, 547 (D.D.C.1983))).

[11]*Id.* (citing *EEOC v. Kansas City S. Ry.*, 2000 WL 33675756, at *4-5; *Bryant v. Farmers Ins.* Co., No. 01-02390-CM, 2002 WL 1796045, at *3 (D. Kan. July 31, 2002)).

[12]*Id.*

5

2.      **Organizational Scope**

Defendant objects to discovery of documents and information relating to package drivers on grounds that Plaintiff was terminated for conduct that happened when he was a feeder driver, thus, Defendant argues, non-feeder drivers are not similarly situated to Plaintiff and discovery related to non-feeder drivers are beyond the scope of relevant discovery.   In support of this argument, Defendant asserts package drivers have different job duties, policies, and procedures than do feeder drivers. Defendant further asserts the package and feeder employees work in different divisions of UPS and have different managers and division managers.

To assert a claim of disparate treatment, a plaintiff must show that he was treated differently than other similarly situated employees who violated employer rules of comparable seriousness.[13] "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[14]   In determining whether two employees are similarly situated, a "court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."[15]

The gravamen of Plaintiff's disparate treatment claim is that he was disciplined for driving and safety infractions — inaccurately characterized by Defendant as "avoidable accidents" — for which non-Iranian, non-Muslims were not disciplined and that the culmination of these unlawful

---

[13]*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citing *Kendrick v. Penske Transp. Servs.,* 220 F.3d 1220, 1230 (10th Cir.2000)).

[14]*Id.* (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).

[15]*Id.*

disciplinary actions over the course of a year resulted in his termination.  Specifically, Plaintiff asserts two of the allegedly "avoidable accidents" were not accidents but instead consisted of the doors of his trailer coming loose due to faulty chains on the trailer doors ("swing-door accidents").

Based on the facts associated with Plaintiff's claim of disparate treatment, the Court finds that discovery concerning non-feeder drivers is overly broad on its face.  This is because the four "avoidable accidents" upon which Defendant relies to justify Plaintiff's termination all occurred in the context of Plaintiff as a feeder driver. When a request is overly broad on its face, the party seeking the discovery has the burden to show the relevancy of the request.

As the party seeking discovery, Plaintiff argues the non-feeder driver information and documents are relevant because (1)  Defendant relied on Plaintiff's driving record as both a package driver and a feeder driver when it decided to terminate him; and (2) Defendant discriminated against Plaintiff on the basis of his religion, race and national origin when Plaintiff was a package driver. The Court is not persuaded by either of these arguments.  First, Plaintiff submits no evidence (beyond mere conclusory assertions) to refute Defendant's statements that Plaintiff was terminated for engaging in four avoidable accidents as a feeder driver in the one year period from October 2004 to October 2005.  The fact that Plaintiff was asked questions and shown exhibits in his deposition about accidents while Plaintiff was a package driver is insufficient to establish relevancy. Second, although Plaintiff generally avers that UPS engaged in unlawful employment practices by holding him to a different standard of performance and requiring him to do his work in a manner not required from non-Muslim, non-Iranian employees, Plaintiff does not specifically allege that any of this conduct occurred when he was a package driver.  For these reasons, the Court finds that discovery requests seeking documents or information regarding non-feeder drivers is overly broad.

### 3.    Temporal Scope

Many of Plaintiff's discovery requests seek documents and information from 2001 to present.[16]   Defendant objects to the discovery requests on grounds that the temporal scope is overly broad.  The Court agrees.

"With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period."[17]   The task of the trial court is to balance the relevance of the information against the burden of production on Defendant.

Based on Plaintiff's allegations regarding discriminatory discipline and unlawful discharge, the Court finds the liability period upon which Plaintiff bases his claims spans from October 2004 to October 2005. Given this liability period, the Court finds that Plaintiff's discovery requests seeking information and documents from 2001 to 2007 appears relevant on their face; thus, it is Defendant, as the party resisting the discovery, who has the burden to establish the lack of relevance

---

[16] Some of Plaintiff's requests involve a more narrow time period.  Other requests specify no time period.

[17] *Owens v. Sprint/United Management Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004) (setting temporal scope at two and a half years prior to discriminatory conduct); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212 (D.Kan.2002) (three years prior to alleged conduct and two years after conduct relevant); *E.E.O.C. v. Kansas City Southern Ry.*, 195 F.R.D. 678, 679 (D. Kan.2000) (three years prior to the time the discriminatory conduct was alleged to have occurred and one year after is relevant); *Long v. Landvest Corp.*, No. 04-2025-CM, 2006 WL 897612, *7-8 (D. Kan. Mar. 31, 2006) (ten-year and five-year temporal scope for discovery requests was overbroad; three years was a reasonable scope, in light of the three-year statute of limitations); *Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM, 2005 WL 375667, *2 (D. Kan. Feb. 3, 2005) (noting three-year temporal scope has been upheld in discrimination cases as reasonable and not overly broad); *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, *2 (D. Kan. Jan. 31, 2002) (three year temporal scope not overly broad).

by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

To that end, Defendant asserts that Plaintiff did not begin working as a feeder driver until May 2004 and that the decision to terminate Plaintiff was made in October 2005 by Steve Mitchell, Guy Albertson, and Bill Margrave. Moreover, the specific disciplinary actions and terminations to which Plaintiff refers in his Amended Complaint and his pleadings all occurred from May 2004 to October 2005 while Plaintiff was a feeder driver. Defendant further asserts that Plaintiff identified the supervisor who unfairly disciplined him during the time period from October 2004 to October 2005 as Steve Mitchell. Steve Mitchell has been the Feeder Manager for Lenexa since March 2003. Guy Albertson has been the Kansas Feeder Division Manager since January 2005. Bill Margrave has been the Kansas District Labor Manager since January 2004.

Based on these facts, the Court finds information and documents regarding similarly situated feeder drivers prior to March 2002 are not relevant. The Court has selected March 2002 as the cutoff for relevancy because incidents from the one-year period prior to Steve Mitchell becoming Feeder Manager could form the basis for disciplinary action by Steve Mitchell once he took over in March 2003. For these reasons, the Court finds that the time period from March 2002 to present is a reasonable time period for the discovery requests at issue.

### 4.    Ambiguity

Defendant objects to the phrases "driving violations" and "safety violations" as vague and ambiguous. The Court disagrees. The party objecting to discovery as ambiguous has the burden to

show such vagueness or ambiguity.[18]  The party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories."[19] Here, the Court finds the phrases "driving violation" and "safety violation" are not vague or ambiguous and that, if Defendant feels it is necessary, Defendant can clarify its answers or include any reasonable definition of the term or phrase in conjunction with its responses.

## C.    Individual Discovery Requests

In their pleadings, the parties group the individual discovery requests into the following categories for purposes of discussion:

- •    Information and Documents Regarding Other UPS Drivers Employed in Kansas
  (Requests 13, 31, 32 and Interrogatories 2, 3, 4, 5, 6, 7, 8, 16)

- •    Witness Contact Information
  (Requests 28, 29 and Interrogatory 15)

- •    Complaints and Grievances Against Supervisor
  (Requests 4, 5, 8, 11, 12)

- •    Information Regarding Plaintiff's Employment at UPS
  (Request 9 and Interrogatory 11)

Accordingly, the Court will discuss the individual discovery requests in the context of the categories set forth by the parties.

---

[18] *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) (citing *Pulsecard, Inc. v. Discover Card Serv., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996)).

[19] *Id.* (quoting *Pulsecard*, 168 F.R.D. at 310).

1.    **Information and Documents Regarding Other UPS Drivers Employed in Kansas**

**Request 13** seeks all documents showing the driving history of each UPS feeder driver in the state of Kansas from 2001 until present.

**Request 31** seeks documents showing all accidents for all UPS feeder and package car drivers for UPS employed in Kansas at any time from 2001 until the present.

**Request 32** seeks the complete personnel file of any UPS employee UPS contends was terminated for driving violations or accidents.

**Interrogatories 2-7** seek information about UPS employees who were terminated from 2002 until the present, including those terminated for having "too many accidents." Plaintiff seeks the identity of each employee terminated, the reason for termination, the identity of persons with knowledge as to the termination, the identity of documents relating to the termination, and whether such employee was or was not reinstated.

**Interrogatory 8** asks UPS to identify all feeder drivers in its Lenexa facility from 2002 until the present who have been disciplined because their trailer doors came loose or the chains on their trailers failed or came loose.

**Interrogatory 16** asks UPS to identify all feeder drivers in Kansas from 2002 until the present who were involved in traffic accidents, were disciplined for a safety violation in the operation of a motor vehicle, or were ticketed or cited by any governmental entity concerning the employee's operation of a motor vehicle. Plaintiff asks UPS to describe each event, identify witnesses to the event and describe the disciplinary action the employee received as a result of each event.

Defendant objects to all of these requests on grounds that they are overly broad in geographic scope, organizational scope, temporal scope and scope of subject matter. Defendant also objects on grounds of undue burden.

a.    **Geographic, Organizational, and Temporal Scope**

Pursuant to the discussion in Section B, *supra*, the Court finds information regarding UPS employees within the Kansas district is relevant, information regarding non-feeder UPS drivers is not relevant and information from March 2002 to present is relevant. Accordingly, and consistent

11

with the Court's findings, Defendant's objection based on geographic scope will be overruled, Defendant's objection based on organizational scope is sustained, and Defendant's objection based on temporal scope is sustained in part and overruled in part.

### b.   Scope of Subject Matter

Defendant also objects to the subject matter of these requests as overly broad.  Specifically, Defendant argues Plaintiff was disciplined and terminated for excessive accidents and thus requests seeking information regarding non-accident driving history, non-accident driving violations, non-accident ticket citations, and non-accident safety violations are beyond the scope of relevant discovery.  Defendant also argues that requests seeking information and documents regarding feeder drivers involved in only one accident is overly broad in that Plaintiff was disciplined and terminated for being involved in more than one accident.  Defendant further argues that information and documents regarding terminations of feeder drivers for any reason, as opposed to termination of feeder drivers for reasons related to driving, is also beyond the scope of relevant discovery.

### i.   *Non-Accident Driving History, Non-Accident Driving Violations, Non-Accident Ticket Citations, and Non-Accident Safety Violations*

The Court finds that Plaintiff's requests for information and documents regarding non-accident driving history, non-accident driving violations, non-accident ticket citations, and non-accident safety violations are relevant on their face. Plaintiff was disciplined and terminated for his driving performance; thus, information and documents requested regarding the driving history of feeder drivers is relevant to Plaintiff's claims of discrimination.  In fact, how UPS disciplines non-Muslim, non-Iranian feeder drivers for committing similar or more serious driving infractions goes to the heart of Plaintiff's claims of disparate treatment.

12

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[20]  Thus, it is Defendant, as the party resisting discovery here, who has the burden to demonstrate that information and documents regarding non-accident driving history, non-accident driving violations, non-accident ticket citations, and non-accident safety violations is not relevant to the claims and defenses in this lawsuit.

In support of its claim of irrelevance, Defendant argues that requests seeking information and documents regarding driving history and safety violations are not relevant because Plaintiff was terminated for only one specific aspect of his driving history:  excessive accidents.  The Court is not persuaded by Defendant's argument.  How Defendant treats non-Muslim, non-Iranian drivers who allegedly commit driving and safety violations is directly related to Plaintiff's claim that he was treated differently when Defendant terminated him for minor driving accidents. Plaintiff has sufficiently narrowed the scope of the requests to pinpoint driving concerns and Defendant has failed to carry its burden to establish irrelevancy.  Accordingly, the Court will order Defendant to produce information and documents requested regarding non-accident driving history, non-accident driving violations, non-accident ticket citations, and non-accident safety violations.

---

[20]*Owens v. Sprint/United Management Co.*, 221 F.R.D. at 652 (citation omitted).

### ii.     Feeder Drivers Involved in Only One Accident During the Relevant Time Period

The Court finds the relevance of Plaintiff's request for information and documents regarding all feeder driver accidents, as opposed to only those feeder drivers who were involved in more than one accident, is readily apparent to Plaintiff's claims.  Plaintiff was disciplined and terminated for excessive accidents; thus, information and documents requested regarding feeder drivers who were involved in any minor or major accident — even if it was only one accident — is relevant to Plaintiff's claims of disparate treatment and pretext.

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[21]  Thus, it is Defendant, as the party resisting discovery here, who has the burden to demonstrate that information regarding feeder drivers involved in only one accident during the relevant time period is not relevant to the claims and defenses in this lawsuit.

In support of its claim of irrelevance, Defendant argues that requests seeking information and documents regarding feeder drivers involved in only one accident is not relevant because Plaintiff was terminated for being involved in more than one accident.  The Court is not persuaded by Defendant's argument.  Although Plaintiff alleges he was treated differently than non-Muslims and non-Iranians with regard to the decision to terminate him, he also alleges he was treated differently than non-Muslims and non-Iranians with regard to at least two of the disciplinary decisions that

---

[21]*Id.*

14

formed the basis for the termination decision.  As such, Defendant has failed to carry his burden to establish irrelevancy and the Court finds that information and documents requested regarding all Kansas feeder driver accidents from March 2002 to present are relevant to Plaintiff's claims of disparate treatment and pretext.

> ### iii.    All Feeder Driver Terminations As Opposed to Termination of Feeder Drivers for Reasons Related to Driving

The Court finds that Plaintiff's requests for information and documents regarding all feeder driver terminations, as opposed to termination of feeder drivers for reasons related to driving, are overly broad on their face.  Plaintiff was terminated for excessive accidents; thus, information and documents requested regarding feeder drivers who were terminated for reasons related to driving are relevant to Plaintiff's claims of disparate treatment and pretext.  Whether other feeder drivers in Kansas were terminated for poor attendance or insubordination, for example, are matters insufficiently related to the facts presented in Plaintiff's claims of disparate treatment and pretext.

When a request is overly broad on its face or when relevancy is not readily apparent, the burden shifts to the party seeking the discovery to show the relevancy of the request.[22]  Accordingly, it is Plaintiff's burden to demonstrate information and documents regarding feeder driver terminations for reasons unrelated to driving are relevant to the claims or defenses in this lawsuit. Plaintiff submits no argument or evidence to support his position on this issue.  Accordingly, Defendant's objections to the discovery requests at issue are sustained and Defendant shall not be required to respond to these requests with information or documents pertaining to terminations for reasons unrelated to driving.

---

[22]*Id.*

c.      Undue Burden

In support of its objection of undue burden, Defendant states UPS employs an average of 400 feeder drivers in Kansas. Defendant maintains that, although the accident histories and driving histories of these feeder drivers are computerized at UPS, they are maintained in different databases and electronically stored as individual records for each driver.  Defendant further states it does not maintain driving records for more than three years for each feeder driver.  Given these facts, Defendant maintains that in order to retrieve the information requested by Plaintiff in Request 13, Defendant would have to locate and print a driving history for each individual feeder driver by year and then switch databases and locate and print an accident history for each individual feeder driver by year.  Defendant estimates that it would take more than 100 hours to locate and print the accident and driving histories of every feeder driver in the Kansas district from 2001 to present, to the extent the histories are available. Defendant further estimates that "[i]t would take months to produce documents concerning all feeder and package, or even all feeder, accidents in the Kansas District for this six year period."

"Once a party has requested discovery, the burden is on the party objecting to show that responding to the discovery is unduly burdensome."[23]  "In making a decision regarding burdensomeness, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information."[24]   The party responding to discovery has the

---

[23]*Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (D. Kan.1991).

[24]*Hoffman v. United Telecomms., Inc.*, 117 F.R.D. 436, 438 (D. Kan.1987) (citing  *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir.1975)).

burden to show why the discovery is improper.[25] "[D]iscovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery."[26]

Plaintiff needs the information requested here to compare his circumstances of disciplinary action and termination with others who held his position. Defendant maintains it will take approximately 100 hours to comply with the request. Based on these facts, the Court does not believe Defendant has demonstrated that compliance would be unduly burdensome. At best, it has perhaps shown that compliance would be inconvenient and involve some expense.

"A court will not excuse compliance with a [request] for relevant information simply upon the cry of 'unduly burdensome.' Rather, the employer must show that compliance would unduly disrupt and seriously hinder normal operations of the business."[27]  In this case, Defendant has not offered any specific estimate of cost involved nor shown how compliance would impact the normal operations of UPS. On the facts before it, the Court finds Plaintiff's need for the documents requested outweighs any burden to Defendant.

---

[25]*Id.* (citation omitted).

[26]*Snowden*, 137 F.R.D. at 333 (citing C. Wright and A. Miller, 8 Federal Practice and Procedure § 2214, p. 647-48 (1970)).

[27]*E.E.O.C. v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993) (citing *E.E.O.C. v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir.1986)).

2.      **Witness Contact Information**

**Requests 28 and 29** seeks a roster with names and telephone numbers of all employees in the feeder department at UPS's Lenexa facility from 2004 to present.

**Interrogatory 15** seeks the identity of all Kansas feeder department employees from 2002 until the present, including each individual's position, telephone number, whether or not the employee is still employed, and the reason for any terminations or transfers.

In response to Requests 28 and 29, Defendant states the documents requested by Plaintiff do not exist and that Fed. R. Civ. P. 34 does not require a party to create responsive documents if they do not exist in the first instance. The Court cannot compel a party to produce documents that do not exist. Plaintiff has not provided any information to lead the Court to believe that such documents do exist. Accordingly, Plaintiff's Motion with respect to Requests 28 and 29 will be denied.

Interrogatory 15 seeks the identity of all Kansas feeder department employees from 2002 until the present, including each individual's position, telephone number, whether or not the employee is still employed, and the reason for any terminations or transfers. Defendant objects to this interrogatory on grounds that it is overly broad in geographic scope, temporal scope, and organizational scope.

a.      **Geographic and Temporal Scope**

Pursuant to the discussion in Section B, *supra*, the Court finds information regarding UPS employees within the Kansas district is relevant and information from March 2002 to present is relevant. Accordingly, and consistent with the Court's findings, Defendant's objection based on geographic scope will be overruled and Defendant's objection based on temporal scope is sustained in part and overruled in part.

18

### b.    Organizational Scope

As opposed to an objection based on the relevancy of information related to non-feeder drivers, Defendant objects to Interrogatory 15 on grounds that contact and other information regarding non-driver employees in the feeder department is not relevant to the claims and defenses in this lawsuit.  More specifically, Defendant argues Plaintiff was disciplined and terminated for excessive driving accidents and thus an interrogatory seeking contact and other information regarding non-drivers in the feeder department is beyond the scope of relevant discovery.

As a preliminary matter, the Court finds that Plaintiff's request for information regarding reasons for termination and transfer is overly broad on its face.  The Court further finds Plaintiff has failed to provide any argument regarding how this information is relevant.  Accordingly, Defendant's objection to providing reasons for termination and transfer for all feeder employees in Kansas will be sustained.

With that said, the Court also finds that Plaintiff's request for contact information regarding non-drivers in the feeder department appears on its face to be reasonably calculated to lead to the discovery of admissible evidence."   Plaintiff brings claims in this lawsuit for harassment and discrimination by his supervisors based on his religion, race and national origin and retaliation by his supervisors for complaining about the harassment and discrimination.  The supervisors at issue include Feeder Manager Steve Mitchell and  Feeder Division Manager Guy Albertson.  Both of these managers have supervisory authority over all employees in the feeder department, not just the drivers in the feeder department.  Thus, it is possible that a Kansas employee in the feeder department who works for Mitchell and/or Albertson could have relevant information regarding whether Mitchell and Albertson harassed, discriminated, or retaliated against Plaintiff.

19

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[28]  Thus, Defendant has the burden to establish lack of relevancy.

Defendant argues contact information regarding non-drivers in the feeder department is not relevant because these individuals are not similarly situated to Plaintiff, who was a feeder driver terminated for excessive accidents.  The Court finds Defendant's argument is misplaced.  Plaintiff does not seek contact information for the non-drivers in the feeder department because they are similarly situated to him, Plaintiff seeks the information so that he can contact witnesses who may have observed discriminatory conduct by their supervisors.  The testimony of others about their treatment by a defendant is typically relevant to the issue of discriminatory intent.[29]  For this reason, Defendant's objection to providing contact information for non-drivers in the feeder department for the Kansas district will be overruled.

### 3.    Complaints and Grievances Against Supervisors

Requests 4, 5, 8, 11 and 12 seek all grievances and complaints made against each of Plaintiff's UPS supervisors or managers from 2001 until the present and against each supervisor who represented UPS in Plaintiff's grievance proceedings in 2004 or 2005.   Interrogatory 9 seeks

---

[28]*Owens v. Sprint/United Management Co.*, 221 F.R.D. at 652 (citation omitted).

[29]*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006) (quoting *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir.1990)

information regarding all grievances filed by Plaintiff and Interrogatory 10 seeks identification of communications by Defendant regarding Plaintiff's termination. Defendant objects to the requests on grounds that they are overly broad in terms of the number of managers, the temporal scope, and the lack of restriction on the subject matter of the grievances.

Both of these interrogatories specifically seek information about Plaintiff's grievances and termination; thus, the Court finds Interrogatories 9 and 10 are relevant on their face to Plaintiff's claims in this lawsuit.  Given this finding, the burden shifts to Defendant to establish lack of relevancy.  Defendant, however, fails to address these two interrogatories in its pleadings. Accordingly, the Court will overrule Defendant's objections to answering these two interrogatories.

With regard to the requests for documents at issue, the Court finds requests for all grievances and complaints made against each of Plaintiff's UPS supervisors or managers from 2001 until the present and against each supervisor who represented UPS in Plaintiff's grievance proceedings in 2004 or 2005 is overly broad on its face.  A sweeping request for all complaints and grievances, regardless of subject matter, made against all of Plaintiff's former supervisors and managers since 2001 is not sufficiently tailored to retrieve only the relevant information. Accordingly, Plaintiff has the burden to establish the relevancy of these requests.

In support of relevancy, Plaintiff asserts that he is entitled to all grievances against each his supervisors and designated representatives on grounds that he may be able to glean relevant information and patterns from the incidents. The Court disagrees and finds Plaintiff's speculative assertions are insufficient to establish relevancy.

Despite the overly broad nature of these requests, the Court is mindful of a party's duty under the federal rules to respond to the extent that discovery requests are not objectionable.[30]   The Court will not, however, compel further response in those instances when inadequate guidance exists to determine the proper scope of a request.[31]   Here, the requests at issue appear non-objectionable to the extent they seek complaints and grievances relating to (1) harassment or discrimination on the basis of race, religion or national origin; or (2) retaliation for complaining about discrimination on the basis of race, religion and national origin or harassment

- made by other employees against Plaintiff's former supervisors in the feeder department from March 2003 – when Steve Mitchell became the Feeder Manager for Lenexa – to present; and

- made by other employees against supervisors who represented UPS in Plaintiff's grievance proceedings in 2004 or 2005.

### 4.    Plaintiff's Employment at UPS

**Request 9** seeks all documents related to Plaintiff's termination hearings, which occurred in 2004 and 2005.

**Interrogatory 11** seeks all personnel policies, guidelines, procedures, provisions, or agreements relied upon by UPS in terminating Plaintiff.

Defendant makes no objection to the Request 9 and Interrogatory 11 other than asserting that it has already provided full responses to each request. Plaintiff disagrees with this assertion, arguing that Defendant has responded to these requests simply by referring Plaintiff to a general mass of documents already produced and that these responses are insufficient.

---

[30]*Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648, 657 (D. Kan. 2006) (citing Fed. R. Civ. P. 34(b)).

[31]*Id.*

**Request 9**

Federal Rule of Civil Procedure 34 governs requests for production of documents. Subsection (b) provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." This provision was added to Rule 34(b) to prevent parties from "deliberately ... mix[ing] critical documents with others in the hope of obscuring significance."[32] In light of these requirements, Defendant will be ordered to fully respond to Plaintiff's Request 9 by identifying (by Bates Number) the documents that Defendant contends are responsive to this request.

**Interrogatory 11**

A party may answer an interrogatory by referring another party to documents attached to the responsive pleadings or to documents previously produced or disclosed. With that said, the reference "shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."[33] It is well settled in this jurisdiction that a party "may not merely refer" another party to documents "hoping [the other party] will be able to glean the requested information from them."[34] Indeed, "[t]he court generally finds such practice unacceptable."[35] "Absent compliance with Rule 33(d) or attachment of appropriate documents, [a party] may not direct [another party] to find answers from previously

---

[32]*See* Advisory Committee Note for 1980 Amendment to Rule 34 (quoting Report of the Special Committee for the Study of Discovery Abuse, Litigation Section of ABA (1977)).

[33]Fed. R. Civ. P. 33(d).

[34]*DIRECTV v. Puccinelli*, 224 F.R.D. 677, 680-81 (D. Kan. 2004).

[35]*Id.* at 680.

produced documents."[36]  Thus, to the extent Defendant has attempted to answer this interrogatory

by generally referring Plaintiff to previous disclosures, its responses are insufficient.  Defendant will

be ordered to amend its answers to specifically refer to the documents (by Bates Number) that

contain the responsive information.

### **Summary of Rulings**

Accordingly, it is hereby ordered that Plaintiff's Motion to Compel is granted in part and

denied in part as specifically set forth below.  Defendant shall serve supplemental responses and

answers complying with the rulings set forth below no later than **July 31, 2007**.

1.  Information and Documents Regarding Other UPS Drivers Employed in Kansas
    (Requests 13, 31, 32 and Interrogatories 2, 3, 4, 5, 6, 7, 8, 16)

    • The relevant geographic scope for these requests is the UPS Kansas district;

    • The time period from March 2002 to present is the relevant time period for
      these requests;

    • The phrases "driving violation" and "safety violation" are not vague or
      ambiguous;

    • Information and documents requested regarding all Kansas feeder driver
      accidents are relevant;

    • Information and documents regarding non-feeder drivers are not relevant;

    • Information or documents pertaining to terminations for reasons unrelated to
      driving are not relevant;

    • Information or documents pertaining to non-accident driving history,
      non-accident driving violations, non-accident ticket citations, and
      non-accident safety violations are relevant; and

    • Defendant's objection based on undue burden is overruled.

---

[36]*Id.*

24

2.      Witness Contact Information
(Requests 28, 29 and Interrogatory 15)

- Plaintiff's Motion to Compel with respect to Requests 28 and 29 is denied;

- Plaintiff's Motion to Compel with respect to Interrogatory 15 is granted, except that Defendant shall not be required to answer that portion of the interrogatory seeking reasons for termination and transfer of all feeder employees in Kansas.

3.      Complaints and Grievances Against Supervisor
(Requests 4, 5, 8, 11, 12 and Interrogatories 9, 10)

- Plaintiff's Motion to Compel with respect to Interrogatories 9 and 10 is granted;

- Plaintiff's Motion to Compel with respect to Requests 4, 5, 8, 11 and 12 is granted to the extent that they seek complaints and grievances relating to (1) harassment or discrimination on the basis of race, religion or national origin; or (2) retaliation for complaining abut discrimination based on race, religion or national origin or harassment

  - made by other employees against Plaintiff's former supervisors in the feeder department from March 2003 – when Steve Mitchell became the Feeder Manager for Lenexa – to present; and

  - made by other employees against supervisors who represented UPS in Plaintiff's grievance proceedings in 2004 or 2005.

4.      Information Regarding Plaintiff's Employment at UPS
(Request 9 and Interrogatory 11)

- Plaintiff's Motion to Compel with respect to Request 9 is granted and Defendant shall fully respond to Plaintiff's Request 9 by identifying (by Bates Number) the documents that Defendant contends are responsive to this request;

- Plaintiff's Motion to Compel with respect to Interrogatory 11 is granted and Defendant shall amend its answers to specifically refer to the documents (by Bates Number) that contain responsive information.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 9th day of July, 2007.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:   All counsel and *pro se* parties